UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JASON J. CORBETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:24-cv-613-AZ |
| | ) |
| FRANK BISIGNARO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Jason J. Corbett's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with the Commissioner that Corbett was provided full notice of his right to representation and knowingly waived that right. Because the Administrative Law Judge developed the record satisfactorily, the Court will affirm the ALJ's decision and deny Corbett's appeal.

### Background

Plaintiff Jason J. Corbett was 40-years old at the alleged onset of his disability. A.R. 209.[2] Corbett is a high school graduate who graduated with a 1.89 GPA. A.R. 503. In 1996, he was in a motor vehicle accident and suffered a traumatic brain injury.

---

[1] On October 28, 2024, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 9.

[2] Citations to the Administrative Record, filed at DE 5, are throughout as "A.R."

A.R. 604. In January 2019, he had a primary care appointment for his obesity. A.R. 574. Follow-up appointments showed decreased flexion, extension, lateral bending, and backpain. A.R. 579, 616. He also received prescriptions for anxiety, anger issues, and attention deficit hyperactivity disorder (ADHD). A.R. 809, 830, 844. Corbett has past relevant work as a stock clerk, janitor, industrial cleaner, and factory helper. A.R.208.

Corbett filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on June 15, 2020. A.R. 195. In his applications, he alleged a disability onset date of February 5, 2020. *Id.* His claims were denied in the initial application, and upon reconsideration, and Corbett thereafter requested a hearing before an ALJ. *Id.* On September 9, 2021, the ALJ held a telephonic hearing, and issued an unfavorable decision. A.R. 193. The Appeals Council remanded the matter on May 26, 2022, to another ALJ. A.R. 218. Corbett appeared telephonically at the second hearing before an ALJ on May 16, 2023. A.R. 15, 41. Corbett appeared *pro se* at this hearing. 48-50. The ALJ denied his application for benefits on August 9, 2023. A.R. 12. Corbett timely appealed to the Council again but was denied on June 14, 2024. A.R. 1-3. Corbett timely appealed the matter to this Court.

In order for Corbett to request an ALJ hearing, he had to submit a form to the Social Security Administration. A.R. 237-38. In this form, he acknowledged his right to representation. *Id.* In response, the Social Security Administration sent Corbett an acknowledgement which included a short section titled "Your Right to

2

Representation." A.R. 240. The acknowledgement also contained two full color-coded pages titled "Your Right to Representation." A.R. 243-44. These pages explained what a representative can do, how to choose one, and what they might charge Corbett. *Id.* This includes the 25 percent cap on fees. *Id.* These same two pages were also included in the notice of hearing sent to Corbett in advance of the hearing. A.R. 261-62. Corbett acknowledged receipt of this notice. A.R. 273. At the first hearing on September 9, 2021, Corbett reiterated his understanding of his right to representation and his wish to proceed without representation. A.R. 81.

Prior to the second hearing, Corbett again received an acknowledgement letter with the two color-coded "Your Right to Representation" pages. A.R. 296-97. He then received a notice of hearing, with two slightly different but thorough "Your Right to Representation" pages. A.R. 316-17. He later received an amended notice and thereafter a second amended notice with the same two pages. A.R. 325-26, 340-41. Corbett acknowledged receipt of the second amended notice. A.R. 346.

At the May 16, 2023, hearing, the ALJ and Corbett discussed his decision to appear without representation. A.R. 48-50. The ALJ explained Corbett's right to representation, what an attorney could do for him, how to find an attorney, and how they work on a contingency fee basis. *Id.* She did not explain the 25% cap on fees. She asked if he wished to proceed unrepresented, or if he would like to postpone the hearing to find representation. A.R. 50. Corbett declined to postpone and proceeded without representation. *Id.*

3

On August 9, 2023, the ALJ issued a written opinion denying benefits. A.R. 12. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Corbett was disabled. At step one, the ALJ determined that Corbett had not engaged in substantial gainful activity since the alleged onset date of February 5, 2020. A.R. 18.

At step two, the ALJ determined that Corbett suffered from the following severe impairments: "obesity; left acromioclavicular arthrosis and subacromial spurring, status-post clavicular fracture; lumbar degenerative disc disease; bilateral carpal tunnel syndrome; and psychological conditions variously described as: unspecified neurocognitive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c))." *Id.* She determined these impairments significantly limited Corbett's ability to perform basic activities. *Id.* The ALJ found Corbett's other impairments of sleep apnea, hypotension, paresthesia of skin/meralgia paresthetica, and binge eating disorder to be non-severe. *Id.* The ALJ also found that Corbett's allegations of widespread arthritis, breathing issues, head injury, and sleep issues (except for obstructive sleep apnea) were not medically determinable impairments due to a lack of objective evidence. *Id.*

At step three, the ALJ concluded that Corbett does "not have an impairment or combination of impairments that meet or medically equals the severity of" any

4

applicable Listing which would presumptively entitle him to a finding of disability. A.R. 19. Though she found that Corbett's impairments were severe, the record did not establish that they meet or equal the severity requirements of any listed impairment. *Id*. The ALJ considered Corbett's spinal conditions, grip strength, obesity, and mental impairments. *Id*. For his mental impairments, the ALJ considered them singly and in combination to see if they met the criteria of listings 12.02, 12.06, 12.11, and 12.13. *Id*. To do so, she examined the "paragraph B" criteria, which require either one extreme limitation or two marked limitations in a broad area of functioning. *Id*. "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id*.

Corbett's problems with memory and his intellectual functioning only met the requirements of a moderate limitation. A.R. 20. The ALJ noted he needed reminders to care for his personal needs and his intellectual functioning was estimated in the extremely low range at one examination. *Id*. However, the evidence also showed that Corbett passed all his high school classes and that other mental examinations indicated his memory, speech, thought process/content, reasoning, judgment, insight, and ability to answer questions were all within normal limits. A.R. 20, 437, 562, 605-06, 613-629, 642. The ALJ made similar findings of moderate limitations regarding interacting with others, concentrating, and adapting. A.R. 20-21.

At step four, the ALJ determined Corbett's Residual Functional Capacity (RFC) as follows:

> [P]erform[ing] light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The claimant can occasionally climb, balance, crouch, kneel, stoop, and crawl. With the bilateral upper extremities, he can frequently feel, handle, and finger. He can have occasional concentrated exposure to extreme cold, heat, and humidity. He can have occasional exposure to unprotected moving mechanical machinery and unprotected heights. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks but not at a production rate pace such as required working on an assembly line. He can make judgments on simple work and respond appropriately to usual work situations where duties are generally predictable and short cycle and adapt to occasional changes in a routine work setting that are explained in advance. He can have occasional interaction with the general public, supervisors, and coworkers and with coworkers, he cannot engage in team or tandem tasks. Further, he cannot engage in tasks that require conflict resolution or persuasion.

A.R. 22. The ALJ stated, as is standard, that she "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* The ALJ further explored the medical evidence and the severity of Corbett's impairments. *Id.* She considered the record in comparison to the intensity, persistence, or functionally limiting effects of Corbett's symptoms. *Id.*

Specific consideration of mental examinations demonstrated the reasoning behind the ALJ's conclusion of only a moderate limitation in Corbett's mental functioning. Dr. Ann Lovko, a state agency psychological consultant, concluded moderate functional limitations because Corbett could "understand, carry out and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting." A.R. 25. Dr. Kari Kennedy also affirmed the mental residual functional capacity assessment. *Id.* The ALJ concluded that their opinions were consistent with the

6

record. *Id*. The ALJ also considered Dr. Gary Durak's 2020 and 2016 psychological consultative examinations, which determined Corbett had a mild intellectual disability based on a Full-Scale IQ of 66. A.R. 26, 604. His 2020 exam concluded that Corbett's "concentration was adequately focused and maintained, his memory was intact, thought processes were logical and goal directed, his mood and affect were euthymic, and his judgment, insight, impulse control, and reasoning were all fair." A.R. 26, 605. Although Dr. Durak did not render a final opinion, the ALJ included this report in her assessment of Corbett's RFC. A.R. 26.

Dr. Rachael Garcia conducted a psychological consultative examination in March 2021. She indicated that additional memory and intelligence testing would need to be administered to determine the extent of Corbett's mental impairment. A.R. 26, 641-42. Dr. Garcia also did not provide an opinion regarding Corbett' work-related abilities, and the ALJ found her report too vague to change the RFC assessment. *Id*. Overall, the ALJ concluded that Corbett's own statements concerning his own impairments were somewhat inconsistent with the objective medical evidence and that his limitations are not severe enough to preclude him from performing all work on a regular and continuing basis. A.R. 27.

With the RFC in mind, at step four, the ALJ concluded that Corbett could perform his past relevant work as a cleaner, since it does not require work-related activities precluded by the RFC. A.R. 28. This finding tracked the vocational expert's testimony and the classification level of the cleaner job as unskilled. Further examination of Corbett's earnings as a cleaner met the level for substantial gainful

activity. *Id.* Conversely, the ALJ found that Corbett's past relevant work as a stock clerk was precluded by his RFC. *Id.* Because the ALJ determined that Corbett could perform his past relevant work as a cleaner, she determined that Corbett was not disabled. Accordingly, the ALJ did not need to proceed to step five and subsequently denied Corbett's claim.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v.*

8

*Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi,*

9

658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

A social-security claimant has a statutory right to counsel at a disability hearing, but he may waive it if he is properly informed. 20 C.F.R. § 416.1500; *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). To ensure a valid waiver, an ALJ must "explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id*. In *Jozefyk v. Berryhill*, the Seventh Circuit upheld a claimant's waiver after he had received written notice via the "Your Right to Representation" pamphlet and a brief oral reminder that he had a right to counsel at the hearing. 923 F.3d 492, 496–97 (7th Cir. 2019).

An ALJ has a higher standard to develop the record in instances where the claimant is unrepresented and may have mental impairments. "Whether or not a claimant is represented, it is a basic obligation of the ALJ to develop a full and fair record. *Cox v. Saul*, No. 1:19-CV-362 DRL, 2020 WL 5512104, at *3 (N.D. Ind. Sept. 14, 2020) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). "[W]here the disability benefits claimant is unassisted by counsel, the ALJ has a duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts[.]" *Thompson*, 933 F.2d at 585 (7th Cir. 1991) (quoting *Smith v.*

10

*Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this special duty is good cause to remand for gathering of additional evidence." *Cox*, 2020 WL 5512104, at *3 (citing 933 F.2d 586). Courts will remand where a plaintiff shows a "significant omission" namely "specific, relevant facts—such as medical evidence— that the ALJ did not consider." Id. (quoting *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)) (noting two-year gap in records warranted remand).

Corbett argues two errors on appeal that: (1) the ALJ erred in failing to more fully develop the record in light of Corbett's *pro se* status and apparent mental impairment; and (2) the ALJ did not obtain a valid waiver of Corbett's right to representation at the hearing. DE 10 at 9.

The first issue requires the Court to balance the ALJ's heightened duty to develop a full and fair record under the circumstances against the deferential standard afforded to an ALJ's decisions and conclusions. Both parties agree that the ALJ has a heightened duty to develop the record when the claimant is unrepresented, particularly when there is an indication of mental impairment. Corbett's argument that the record was underdeveloped generally rests on one point: Corbett's extremely low range scores on IQ testing. DE 10 at 11. Dr. Durak administered the testing in 2016, and made further observations of Corbett in 2020, which the ALJ relied upon in her decision. A.R. 605. Because another examiner, Dr. Garcia, noted that formal IQ testing may be required to make additional determinations, Corbett argues that

11

the ALJ was required to explore this line of evidence to determine the extent of his mental limitations.

A court will "generally uphold[] the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). Corbett attended three consultative exams, which were reviewed by the two state agency consultants and in turn considered by the ALJ. Both state agency consultants, Drs. Lovko and Kennedy, concluded that despite the extremely low scores, their assessment of his mental functioning was accurate and comported with the rest of the medical evidence. A.R. 134, 160. Particularly, both doctors noted that their review of all other indicators of mental limitations did not align with the low scoring.[3] The ALJ found their opinions persuasive; "[t]heir opinion regarding the mental residual functional capacity was consistent with and supported by the record as a whole, which indicated relatively unremarkable mental status examination findings, and take into consideration the 2016 and 2020 intelligence and memory testing as well as school records." A.R. 25.

This is not an instance where the ALJ made a "significant omission" or ignored "specific, relevant facts—such as medical evidence[.]" *Nelms*, 553 F.3d at 1098 (7th

---

[3] Dr. Kennedy states the low IQ scores "do[] not support the severity of the WMS scores at the initial level. For example, 8/2020: NAD, alert/oriented, clmt is age appropriate, normal speech, cooperative, normal mood with NO memory/cognitive concerns appearing to be observed. 9/2020: Clmt successful with weight mgmt., no anxiety, no depression, NAD, alert/oriented, is age appropriate, normal speech, cooperative, normal mood. No memory/cognitive concerns appear to be observed. 10/2020: In good spirits, continuing to lose needed weight, no anxiety or depression, NAD, alert/oriented, age appropriate, normal speech, cooperative, normal mood. NO memory/cognitive concerns appear to be observed. 12/2020: In good spirits, no depression, no anxiety, NAD, alert/oriented, age appropriate, normal speech, cooperative, normal mood." A.R. 160.

12

Cir. 2009). To the contrary, she addressed the low scoring head on and agreed with the state agency doctors' opinions on the apparent inaccuracy of the scores. She weighed the evidence and ultimately found Drs. Lovko and Kennedy more persuasive in light of the entire record. The Court will not second guess well-supported and well-explained reasoning, nor encourage the ALJ to play doctor with the medical evidence. Because no evidence, or lack thereof, "compels a contrary result," Corbett's first argument is unavailing. *Thorlton v. King* 127 F.4th 1078, 1081 (7th Cir. 2025).

As to Corbett's argument that he did not validly waive his right to representation, the Seventh Circuit's *Jozefyk v. Berryhill* opinion squarely addresses this issue. 923 F.3d 492, 495 (7th Cir. 2019). This case similarly involved a *pro se* claimant who argued that he did not validly waive his right to representation. Though Jozefyk was asked at his hearing if he understood his right and if he would like to postpone the hearing to find counsel, he declined to do so. *Id.* As in the instant case, the ALJ in *Jozefyk* did not explain the 25% fee cap, nor did he provide a more thorough explanation of Jozefyk's right to representation. *Id.* Jozefyk did, however, receive multiple notices explaining his right to representation, and he acknowledged that he had received them by signing the acknowledgement form. *Id.* at 496. Ultimately, the Seventh Circuit, recognizing that it already imposes a higher standard than the regulations do on waiving one's right to representation, nonetheless held that "written notice adequately apprises a claimant of his right to counsel." *Id.* at 497. The Seventh Circuit emphasized that this is "especially true when the ALJ issues the claimant an oral reminder at the hearing." *Id.*

Here, Corbett received the notice explaining his right to representation six times and signed at least two of those forms. He was reminded of his right at both hearings. And in the second hearing primarily at issue, even though the ALJ did not mention the 25% fee cap, she thoroughly explained all other aspects of Corbett's right to representation. Her oral reminder far exceeded that which was done in *Jozefyk*. The Seventh Circuit has declined to extend its already heightened standard for waiving the right to representation, and I decline to do so here.

## Conclusion

For the reasons discussed, the Court hereby **DENIES** the relief requested in Plaintiff Jason J. Corbett's Opening Brief [DE 10] and **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 15th day of September 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT